## BRANCH OF THE BANK OF THE STATE OF ALABAMA AT MOBILE v. JAMES AND DARRINGTON.

1. Where the principal debtor about a month previous to the maturity of the debt, conveys to the creditor, real and personal estate apparently sufficient to satisfy the debt, upon an agreement that no suit shall be brought thereon within five years, such agreement is founded upon a sufficient consideration, and is binding upon the parties.

2. It is competent for one joint maker of a promissory note to show by extrinsic evidence that he is a mere surety; and this although he did not inform the payee of the fact at the time the note was accepted. Perhaps the law may be otherwise, where joint promisors are described in the note as principals, or contract as such with the payee.

APPEAL from the Circuit Court of Mobile.

This was a proceeding by notice and motion, at the suit of the appellant, to recover of the appellees and Robert D. James the amount of a promissory note made by them on the 11th March, 1841, by which they promised to pay "Twelve months after date, to B. Gayle, cashier, or bearer, twenty-six thousand two hundred and thirty-one 14-100 dollars, with interest from date, for value received, negotiable and payable at the Branch of the Bank of the State of Alabama at Mobile." The cause was tried on issues joined to the plea of *nil debit*, severally interposed by the defendants, and a verdict returned for the appellees, on which judgment was rendered accordingly.

On the trial, a bill of exceptions was sealed at the instance of the plaintiff; from which it appears that the note described in the notice being adduced, the defendants offered a witness, who testified that it was given for a debt due the plaintiff by Robert D. James, and that neither of the appellees received any money thereon, or on the note for which it was substituted, but R. D. J. obtained the proceeds from the Bank for his individual use : that these facts were known to the plaintiff when the note was accepted. It was further shown that before the note became due R. D. J. submitted to the Bank a proposition in the following terms : " Mobile, Feb. 14, 1842. President and Directors of the Bank of the State of Alabama at Mobile. Gentlemen. For the especial purpose of protecting my securities, and securing my extended debt for $26,231 14, due 14th of March, beyond all possible contingency, I beg leave to submit to you the following proposition. To convey my entire estate in Clarke county, consisting of about seventy negroes, a plantation on the Alabama river of two thousand acres of land, with my dwelling house in the pine woods, six miles from the plantation, on a tract of about five hundred acres, together with all my household and kitchen furniture, mules, horses, cattle, hogs, &c. On the plantation there are six hundred acres of cleared land, inferior to none in the State, with forty able working hands. The estate to be placed under the management of such agents as the directory may choose. The entire cotton crop to be shipped yearly to Mr Boykin ; the proceeds to be applied towards the payment of this debt, until the debt shall be paid. No reduction to be made from the proceeds of the crop, except what may be necessary to defray the expences of the plantation. The President and Directors agreeing not to sue me, or to sell any part of my estate for the period of five years, without my consent in writing. For all further particulars, I refer you to Mr. Boykin.

Most respectfully,           Robt. D. James."

This proposition was accepted by plaintiff, and in pursuance thereof, R. D. J. executed a deed of trust, which was delivered accordingly. The appellees were absent when the proposition was made, and there was no evidence that it was ever assented to, by them. To the admission of the evidence showing that the appellees were sureties merely, of R. D. J. the plaintiff objected; but the objection was overruled.

The Court charged the jury, that it was their duty to ascertain from the evidence whether the appellees were sureties ; if they were, and the jury believed that the plaintiff knew before the execution of the deed of trust, that the appellees were the sureties of R. D. J. in the note sued on, then according to the law as settled in this State, they were discharged from liability ; unless they assented to giving time to their principal, in consideration of the deed of trust.

A. Fox, for the appellant, made the following points :

1. Parol evidence is inadmissible to prove that some of the makers of a promissory note subscribed it as sureties, where the note shows nothing more than that they are joint promissors. Such evidence not only adds to the terms of the contract, but varies its legal effect. [3 Phil. Ev., C. & H's Notes, 1460–1467 ; 1 Ala. Rep. 160 ; 2 Id. 571 ; 3 Id. 181 ; 3 Camp. Rep. 57 ; 1 Taunt. Rep. 347 ; 4 Id. 102 ; 11 Mass. Rep. 27 ; 8 Wheat. Rep. 211.] 5th Alabama Reports 451, is not adverse to this position. What is there said upon the point, must be considered as a mere *dictum,* and will not be found to be sustained by the authorities cited. [See 2 Johns. Ch. Rep. 556 ; 7 Johns. Rep. 337 ; 13 Id. 174 ; 4 N. Hamp. Rep. 221 ; 2 D. & E. Rep. 366 ; 8 Taun. Rep. 737 ; Minor's Rep. 357.] In Bruce v. Edwards, 1 Stew. Rep. 11, the fact of suretyship was not a question of evidence but was admitted. The current of authority is adverse to the admission of parol proof in such a case. [Wheat. Selw. 294 ; 1 Stark. Ev. 361 ; 1 Taunt. Rep. 72 ; 5 Id. 192 ; 21 Eng. Com. L. Rep. 135 ; 10 Peters' Rep. 257 ; 14 Pet. Rep. 201.]

The appellees have undertaken to pay as joint-promissors—in that character have contracted with the plaintiff, and cannot be permitted to show that they undertook to pay as sureties, so as to weaken the force of their engagements, or to impose other duties or obligations than the law affixes to the contract as expressed. [Story on Bills, 510, and note 1 ; Story on Con. 1 ; 2 Bl. Com. 446 ; Chit. on Con. 7 ; 1 Starkie's Ev, 361 ; 5 Pick. Rep. 506 ; 3 Johns. Cas. 1 ; 9 Sergt. & R. Rep. 229 ; 12 Id. 382 ; 8 Verm. Rep. 243 ; 17 Pick. Rep. 171 : 3 Fairf. Rep. 444 ; 2 Id. 442 ; 11 Mass. Rep. 27 ; 5 Pet. Rep. 390.]

2. The arrangement made between the plaintiff and Robert D. James, would not estop the appellees from maintaining an action

for their reimbursement, upon paying the debt. [Theob. on Pr. and S. 164; 12 Mod. Rep. 548; 1 Ld. Raym. Rep. 688; 6 Taunt. Rep. 288; 6 Bing. Rep. 547; 8 Mass. Rep. 480; 16 Id. 24; 17 Id. 623-8.] It was not a technical release, and could not therefore operate as a release. [22 Pick. R. 305; 1 Metc. Rep. 276; 8 D. & E. Rep. 168; 2 Swanst. Rep. 550.]

The agreement to give time is *conditional*, depending upon the prompt payment of the instalments; [7 Mass. R. 265,] if the principal made default, he was suable immediately, just as if no effort to prolong the day of payment had been made.

3. The Court undertook to decide on the effect of the evidence, and drew inferences unfavorable to the plaintiff, which should have been submitted to the consideration of the jury. Taking all the evidence together, it cannot be inferred that the plaintiff intended to discharge the appellees; for the deed of trust explicitly declares that it was for their protection.

4. It was not enough that the plaintiff knew of the fact of the suretyship of the appellees before time was given to their principal; but such knowledge, to make the deed of trust operate a discharge, should have been acquired when the note was accepted. If the parol evidence, be admissible, it must be on the ground, that the fact was known when the contract was being negotiated, and made a part of it. Knowledge subsequently acquired cannot affect the payee. [2 Const. Rep. So. Caro. 267; 14 Pet. Rep. *supra;* Pittman on Prin. and S. 183, note 6, and cases there cited.]

J. A. CAMPBELL, for the appellees, insisted that an examination of the records of all the cases decided by this Court upon the question now presented, would show that the fact of suretyship did not appear upon the face of the writing. [1 Stew. Rep. 11; 2 Id. 63–264; 3 Id. 160; 4 Porter's Rep. 232; 9 Id. 334; 2 Ala. Rep. 264; 5 Id. 451; 6 Id. 718; see also, 4 N. H. Rep. 221; 2 Metc. Rep. 176; 3 Id. 255; 35 Eng. C. Rep. 57; 13 Johns. Rep. 174; 17 Id. 394; 3 Wend. Rep. 397; 13 Maine's Rep. 202; 5 Ohio Rep. 207; 11 Id. 448; 4 Hill's Rep. 211; 5 Id. 160.) In England, it is conceded that the defence must be made in Equity, where the relation of principal and surety does not appear from the instrument; yet the law upon this point does not appear to be very well settled there. The course of decision rests upon a *Nisi Prius* opinion

Branch Bank at Mobile v. James and Darrington.

of Lord Ellenborough, [2 Camp. Rep. 185,] a case which has been repeatedly questioned. [Pitman on Prin. and S. 184, and note 6.]

To entitle the sureties to insist on the extension of the time of payment, it is not necessary that the plaintiff should have been informed of the fact of the suretyship at the time the note was discounted. He referred to the cases already cited from the Reports of this State, and 13 Verm. Rep. 81 ; 5 Wend. Rep. 501; Holt's N. P. 84 ; 3 Mer. Rep. 272 ; 1 Mees. & W. Rep. 205.]

COLLIER, C. J.—The note which the defendants in error united with R. D. James in making, matured in March, 1842, and in February preceding, the proposition of the principal to convey property to the plaintiff, upon a stipulation that he should not be sued, nor his property sold for five years thereafter, was submitted to the Bank ; and afterwards consummated by the execution of a deed of trust. Here was a clear agreement by the creditor to give time to the principal upon a sufficient consideration—the conveyance by way of security of a large estate, apparently more than adequate to pay the debt *in toto*. This being the condition of the case as shown by the record the legal inference is, that the contract as proved by the deed of trust, is obligatory upon both parties.

The note sought to be recovered does not *in haec verba*, describe the parties either as principals or sureties, but merely as joint-promissors, so that those cases which maintain, that, where a party has stated the character in which he contracts, he shall not be allowed to prove the reverse by extrinsic evidence, have no application.

It must be conceded that the *prima facie* intendment in a case like the present, is, that the parties who subscribed the note are co-makers merely, and it devolves upon those who would profit by showing the contrary, to prove it. There are certainly quite a number of cases, both English and American, which maintain that it is not allowable for a *joint obligor*, whose suretyship is not indicated by the instrument to establish the fact by parol evidence, and that the parties to an accommodation bill occupy a different relation *inter se* than that the paper itself shows. But it is apprehended that the American decisions do not sustain so stringent a rule in respect to promissory notes ; and it may

120

indeed be questioned whether the strictness of the earlier English adjudications have not been so much relaxed as to admit parol proof of the character in which one or more of several makers subscribed a note. [See Pitman on Prin. and S., note 6, and cases there cited.] But however this may be, is by no means an important inquiry with us at this day ; for all our decisions upon the subject, commencing with 1st Stewart, and continued down, explicitly recognize the admissibility of extrinsic evidence in such a case. If we were dissatisfied with them, they have become too deeply and firmly engrafted in our jurisprudence, to be over-ruled, without an inexcusable disrespect of the maxim *stare decisis.*

But it is insisted, that conceding the admissibility of the proof, it can avail nothing, unless the payee of the note was informed at the time of its acceptance of the relative position of the parties. We are aware that some of the cases in respect to accommodation bills have admitted the relation of the parties to be shown to be different in legal effect from the situation they occupy upon the paper, where the facts are communicated to the holder at the time he receives it. And where he was not then informed of it, such proof has been rejected upon the ground, that it would be a fraud upon his rights, or the parties were estopped from offering it—the parties having impliedly admitted that they were liable in the order in which their names appear. Whether these cases are defensible upon principle or not, we need not now inquire. But we may remark that we are not insensible to the force of the argument upon this point ; it can be very well imagined why paper not subject to the law of principal and surety would some-times be more valuable, than if it were thus trammelled. Yet our researches do not furnish a single case where a promissory note was sought to be recovered, in which the distinction is taken be-tween the effect of information in respect to the character of the makers undertaking, communicated contemporaneously with, or subsequent to its delivery. Our own decisions have never recog-nized the distinction, but like those of other States, and elementa-ry works, lay down the law broadly. Under these circumstan-ces, we do not feel authorized to innovate upon the general and long continued understanding both of the bench and the bar. If the law upon this point, as heretofore understood, is prejudicial to creditors, it were better that the Legislature should apply the appropriate corrective.

In thus stating the law, we do not desire to be understood that it is competent for joint-promissors, in all cases, to show the precise situation they occupy in respect to each other, so as to impose conditions and duties upon the payee more disadvantageous and onerous than he was authorized by the contract to expect. If they have contracted as principals with the payee, we should think, they could not assume a different relation when they are jointly sued for a failure to perform their undertaking. But, if in such case, the defence set up affirms the suretyship of some of the makers, and makes it apparent by proof, it will be competent for the plaintiff to show that the defendants dealt with him as principal.

Our conclusion is, that the judgment must be affirmed.